STATE OF FLORIDA, on the Relation of J. T. MILLINOR, *Plaintiff in Error,* vs. COLUMBUS B. SMITH, et al., *Defendants in Error.*

144 So. 333.

Division B.

Opinion filed October 22, 1932.

*David Lanier, W. T. Davis* and *R. H. Rowe,* for Plaintiff in Error;

*R. E. Cowart* and *R. C. Horne,* for Defendants in Error.

DAVIS, J.—This is a writ of error taken to review a judgment quashing and dismissing a mandamus proceeding instituted for the purpose of requiring a recount of the primary election ballots cast for the Democratic nomination for Sheriff of Madison County, at the primary election of June 28, 1932. The command of the writ was that the inspectors and clerks of election precincts Nos. 1, 5 and 8 be required to forthwith properly, correctly and accurately tally and count, and proper, correct and accurate returns make of all votes cast in said precincts for each of the opposing candidates for nomination G. L. Morrow and J. T. Millinor.

In response to the allegations of the alternative writ which were to the effect that the respondent inspectors

and clerks had not correctly called, counted, tallied and returned all of the votes for the relator Millinor, that were cast for him, and that the returns made showed a greater number of votes for relator's opponent, G. L. Morrow, than were actually and legally cast for him, and that unauthorized persons were allowed by the inspectors to participate in making the call, count and tally of votes, the respondents answered amongst other things, that after the return of the ballot boxes to the Supervisor of Registration, and after the declared result of the election had been made known to the public, that some person or persons unknown had unlawfully broken and entered a window in the Supervisor's office where the ballot boxes were kept, and because thereof, respondents questioned the truth of the allegation that the ballot boxes and ballots had been securely kept and preserved, or that they had not been tampered with.

The respondents further interposed a return "denying" each and every of the other material allegations of the alternative writ, and after demurrers to the return were overruled, issue was joined and the case proceeded to trial before the Circuit Judge.

At the hearing of the issue joined, the trial Judge entered an order and judgment reading as follows:

"This matter comes on for further consideration upon the petition for an Alternative Writ of Mandamus heretofore issued, the answers of the Respondents thereto, and the argument of counsel for the parties. At the hearing in this connection on August 16th, 1932, the Relator, by his attorneys, filed demurrer to each of the answers of Respondents, and also filed a motion for Peremptory Writ, notwithstanding the answers of Respondents. The demurrers were overruled, and the Relator then asked leave to withdraw the motion for peremptory writ notwithstanding the answers, and for leave to file joinder of issue, and the same was by the Court granted. Whereupon, Relator

filed joinder of issue to portions of Respondent's answers, but at the same time in the joinder admitted that the allegations of answers that the room in which the ballot boxes were stored was unlawfully broken and entered into were true. Notwithstanding this admission the Relator moved the Court to examine the boxes and the ballots therein, and announced that unless such course was pursued the Relator declined to proceed further. The Court thereupon advised counsel that in view of their admission that the room containing the bollot boxes had been broken into as charged by Respondents, thereby, in the opinion of the Court seriously clouding the integrity of the boxes, and rendering it uncertain as a matter of fact that they were in the same condition now as when placed in the room, that the Court declined to enter into or examine the boxes or the ballots therein, or to require it to be done. Further the Court advised counsel that in view of above circumstance admitted to be a fact, and in view of their announcement that they declined to proceed further unless their motion for an examination of the boxes and ballots were granted, that it was his opinion that the alternative writ should be quashed and the proceedings dismissed.

There is no question in the mind of the Court that whoever broke into the room containing the ballot boxes did so for the purpose of tampering with the boxes and their contents, and for the purpose of either destroying or changing the expression of the voters as contained therein as expressed on the ballots. In this day and time when crooks are shrewd and far sighted, and when they can carry on much nefarious business and completely cover up all track and sign thereof, this bald admitted fact that this room was broken and entered carries with it convincing proof that the perpetrator did so for no other purpose than to destroy the then condition of the boxes or to cloud the integrity of the expression of the voters as contained therein. There could have been no other reason or purpose for such reprehensible and unlawful act.

Our Supreme Court has held, State v. Haskell, 72 So. 451, that mandamus can be used to ascertain the

correctness of returns in primary elections, by examining the ballots, and the Court states the Legislature has recognized this by providing that the ballots shall be carefully preserved 'until after the next general election.' That course is unquestionably proper and satisfactory, when the boxes and ballots have been carefully preserved in the same condition as they were when first delivered by the inspectors to the Registration officer. But when it is admitted, as is the fact here, that the room where the boxes were stored was unlawfully broken into, and there could have been but one purpose for such act, how can there be any fair certainty that the boxes have been 'carefully preserved' as required by law. If Mr. Millinor, the Relator in this cause, had been declared the nominee by the same number of votes over his opponent, Mr. Morrow, and then Mr. Morrow had instituted proceedings for a recount, and the room where the boxes were stored had been broken and entered as now admitted here, there is no question in the mind of the Court that Mr. Millinor and his counsel would now be strenuously insisting that such predatory act so clouded the intergity of the boxes and destroyed the certainty of their having been 'carefully preserved' as to make improper and unjust any attempt to redetermine the result by a recount under such circumstances.

Therefore, it being admitted that the room where the boxes were stored was broken into as alleged by Respondents, and it being the opinion of the Court that the boxes and ballots have not been carefully preserved as required by law, and in view of the announcement of the Relator that he declines to proceed further unless the Court examine the boxes and ballots, it is the judgment of the Court that the alternative writ of mandamus heretofore issued should be, and the same is hereby quashed, and the proceedings dismissed at the cost of the Relator, J. T. Millinor.

Done this August 18th, 1932, at Mayo, Florida.

HAL W. ADAMS, Circuit Judge.''

We do not concur in the holding of the learned trial judge to the effect that the mere "uncertainty as a mat-

ter of fact'' whether or not the ballot boxes and ballots had been actually tampered with through the breaking and entering of the Supervisor's office, in and by itself and standing alone, sustained the Court's refusal to examine and consider the ballot boxes or warranted the quashing of the alternative writ, if the right to have a recount of the ballots had been otherwise maintained and established by the relator.

In State v. Haskell, 72 Fla. 176, 72 Sou. Rep. 451, this Court held that mandamus will lie to ascertain the correctness of the return in primary elections and that an examination and recount of the ballots will be ordered in such proceedings when demonstrated to be necessary for that purpose.

The right to a correct count of the ballots in an election is a substantial right which it is the privilege of every candidate for office to insist on, in every case where there has been a failure to make a proper count, call, tally or return of the votes as required by law, and this fact has been duly established as the basis for granting such relief.

In the Haskell case, *supra,* the legal predicate for the recount there applied for was a demonstration *from the face of the returns themselves* that the count of the second choice vote *as returned* was an impossible count, because the returns on their face showed more second choice votes cast in some instances than the same voters cast first choice votes,—a legal impossibility. Since the *inaccuracy* of the returns involved in that case appeared *on the face thereof,* the only issue left to be decided in that case was whether or not the ballots had been so kept as to warrant the Court in ordering a recount to straighten out what was otherwise obviously an indisputable inaccuracy in the count.

And in every similar case, the legal predicate for a

mandamus to compel a recount of the ballots cast in an election is the demonstrated failure of the inspectors and clerks of the election to perform some continuing mandatory legal duty resting upon them governing their procedure for making the count, or some inaccuracy shown to have occurred in the making of the returns that they have already made.* And so it is that in every instance where charges of irregularity of procedure, or inaccuracy of returns have been made, and such charges have thereafter been properly put in issue by the respondents' return to an alternative writ of mandamus, the court must find as a fact that a legal basis for ordering a recount exists, before ordering such recount.

The statutes provide that the canvassing Board shall make its canvass as a canvassing Board, solely and only from the returns. See Section 407 C. G. L., 350 R. G. S., as amended by Section 11 of Chapter 13761, Acts of 1929. Therefore, so long as the returns and certificates of the election inspectors stand unchallenged, these returns and certificates are the best evidence under the law of what the result of the count of votes was.

But where the returns and certificates of the election inspectors have been duly challenged, and the facts have been shown in evidence or are admitted by pleadings, which impeach the reliability of such returns and certificates as evidence, because of some substantial failure on the part of the election officers to proceed according to law in making or arriving at their returns and certificate, the ballots themselves then become the best evidence of how the electors voted, and such ballots may be examined by the Court as original evidence, when necessary to verify the accuracy of the returns. See 9 R. C.

---

*To prove which, if not provable from the face of the returns, or by other competent evidence, watchers are permitted while the ballots are being counted. See Sec. 8140 C. G. L., 5877 R. G. S.

L. 1165; Sullivan v. Orange County Commissioners, 59 Fla. 630, 52 Sou. Rep. 517. Such is the effect of our previous cases on the subject of recounts of primary election ballots through mandamus proceedings.

Therefore in cases where a right to a recount of ballots to rectify an erroneous return has been established by the relator, such established right cannot be defeated through the showing of a mere conjectural possibility or likelihood that the integrity of the ballot boxes or of the ballots has been destroyed by someone's illegally tampering with them.

On the contrary, where it is suggested or charged that a recount should be refused on the sole ground that the integrity of the ballots and ballot boxes has not been preserved since the election, it is the duty of the Court before sustaining such an objection, to make such an examination of the ballot boxes themselves, and such inquiry of the inspectors and clerks of election with regard to the integrity of the seals thereon, or concerning other conditions relating to the boxes, as will enable the Court to draw the reasonable inference from supporting evidence, that the integrity of the ballots no longer exists. To hold otherwise would permit the valuable rights of a relator to a correct count to be lightly defeated through slight circumstances deliberately contrived by some designing person to bring about a bare suspicion of irregularity, but not sufficient to prove it, to the effect that the ballot boxes containing the ballots have not been properly kept, or have been tampered with. See Tebbe, vs. Smith, 108 Cal. 101, 41 Pac. 454, 49 A. S. R. 68, 29 L. R. A. 673.

In this case, however, while the view expressed by the trial judge was not in accord with this Court's view on the subject, relator neither proved nor attempted to prove the facts in issue which were required to be proved

by him in order to entitle him to have a recount ordered, even if the ballot boxes had been shown to have been properly kept and their integrity was beyond question.

It is not sufficient to say that the announced view of the trial judge made such proof a useless formality, after the judge announced his opinion just referred to. It was not a useless formality to prove or proffer to prove the facts which would have demonstrated relator's right to have a recount and thereafter to urge the same to this Court as ground for holding the trial judge in error for refusing to order it.

Consequently, when the relator refused to proceed with the trial and failed to prove or attempt to prove his case, it was in legal effect such a failure to prosecute his complaint as warranted the trial judge in quashing the alternative writ and entering judgment for the respondents. See 3rd headnote in State v. Chillingworth, 106 Fla. 323, 143 Sou. Rep. 346.

In this case there was a refusal by relator to proceed with the establishment of facts entitling him to the relief prayed, and for such failure to proceed as far as relator might have proceeded, the court ordered the alternative writ of mandamus to be quashed and the proceedings dismissed. Such ruling did not constitute reversible error, so the judgment must be affirmed.

If there were errors committed in settling the pleadings, as argued by plaintiff in error such errors have likewise become immaterial, because if the failure of relator to proceed warranted a dismissal of the cause for that reason at that stage of the case, the dismissal being proper, steps which antedated it are eliminated from consideration here. Whether or not a voluntary nonsuit with bill of exceptions could have been taken under Section 4617 C. G. L., 2907 R. G. S., in a case like this, which was a mandamus case, is not decided, since there

was no nonsuit with bill of exceptions asked for in this case.

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND BROWN, J., concur in the opinion and judgment.